**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID L. HULA,

        Plaintiff,

                                    12cv1562
       v.                         **ELECTRONICALLY FILED**

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

**MEMORANDUM OPINION**

**I.**    **INTRODUCTION**

David L. Hula ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act").  This matter comes before the Court upon cross-motions for summary judgment.  (Doc. Nos. 9 & 12).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment (doc. no. 9) will be GRANTED, and Defendant's Motion for Summary Judgment (doc. no. 12) will be DENIED.

**II.**    **PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI with the Social Security Administration on April 21, 2009, claiming an inability to work due to disability beginning May 31, 2005.  (Transcript ("Tr.") at 11).  Plaintiff was initially denied benefits on January 7, 2010.  (Id.).  A hearing was scheduled

for March 17, 2011. (Id.). Plaintiff appeared to testify, and was represented by counsel. (Id.). A vocational expert ("VE") also testified. (Id.). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on April 28, 2011. (Tr. at 11-21). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on August 30, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (Tr. at 1-5).

Plaintiff filed his Complaint in this Court on October 26, 2012. (Doc. No. 1). Defendant filed her Answer on December 31, 2012. (Doc. No. 6). Cross-motions for summary judgment followed. (Doc. Nos. 9 and 12).

### III.   STATEMENT OF THE CASE

The ALJ made the following findings in denying Plaintiff's application for DIB and SSI:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009 (Tr. 13);
2. The claimant has not engaged in substantial gainful activity since May 31, 2005, the alleged onset date (Id.);
3. The claimant has the following severe impairments: history of esophageal ulcer, and major depressive disorder (Id.);
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Id.);
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except he should engage in no hazards such as unprotected heights, or dangerous machinery, no exposure to temperature extremes, and have a sit/stand option. Further, the hypothetical individual is relegated to simple routine repetitive tasks, no piece-work, no independent judgment, and no reading, writing, or math (Tr. 15);
6. The claimant has no past relevant work (Tr. 19);
7. The claimant was born on April 21, 1973, and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (Id.);
8. The claimant has at least a high school education and is able to communicate in English (Tr. 20);
9. Transferability of job skills is not an issue because the claimant does not have past relevant work (Id.);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; (Id.) and,
11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2005, through the date of this decision (Id.).

### IV.  STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994).  A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Sec'y of*

*Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the

4

claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.  In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context.  *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001).  Thus, the Court's review is limited to the four corners of the ALJ's decision.

**V.   DISCUSSION**

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred: (1) in failing to consider the psychological evaluation of The Total Learning Center ("TLC"); (2) in failing to consider Plaintiff's knee impairments; (3) in improperly considering Plaintiff's work as a firefighter and trustee for his church; (4) disregarding the testimony of Plaintiff's mother; and, (5) in finding that Plaintiff could work as a marker and/or surveillance system monitor; and. (Doc. No. 11 at 5-8).  Defendant counters that the ALJ had substantial evidence that Plaintiff can

5

perform a reduced range of unskilled light work, that the ALJ properly weighed the medical opinions of record, and that substantial evidence supports the ALJ's credibility analysis. (Doc. No. 13 at 11-16).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the Court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met his responsibilities under the law.

    A.    <u>Consideration of Certain Evidence</u>

Plaintiff first contends that the ALJ erred by not considering the TLC report. The TLC report discussed four "challenges" facing Plaintiff: trouble with executive functioning; reading; math; and self-confidence/anxiety. Tr. 194-198. The Court is mindful that it is not necessary for the ALJ to discuss every opinion that is in the record when the ALJ accepts the opinions and includes those opinions within the RFC. *Lambert v. Astrue*, 2009 WL 1605593, *12 (W.D. Va. June 8, 2009); *Diaz v. Comm'r of Soc. Sec.*, 2008 WL 2668812, *6 (D. N.J. June 27, 2008).

Thus, although Plaintiff is correct that the ALJ did not discuss the TLC report in-depth, the RFC determined by the ALJ includes all of the limitations that were discussed by the TLC report. In particular, the RFC states that Plaintiff is limited to "simple routine repetitive tasks, no piece-work, no independent judgment, and no reading, writing, or math." Tr. 15.

Accordingly, there was no error in step five. To the extent that Plaintiff argues that this error impacted step three, the Court finds that to the extent the ALJ committed err, it was harmless. *Wright v. Comm'r of Soc. Sec.*, 386 F. App'x 105, 109 (3d Cir. 2010).

Plaintiff next argues that the ALJ failed to consider Plaintiff's knee impairments. However, again the ALJ included Plaintiff's knee impairments in the RFC by including the sit/stand option. Tr. 15. Furthermore, his knee impairment, even at a level claimed by Plaintiff, would not allow for a finding of disabled at step three. Therefore, the ALJ committed no err with respect to consideration of Plaintiff's knee impairment.

Plaintiff also argues that the ALJ failed to consider the testimony of his mother. However, there is no testimony by Plaintiff's mother that warranted discussion, other than that which the ALJ referenced in his decision, and the ALJ actually found the testimony of Plaintiff's mother to be credible. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

Plaintiff further argues that the ALJ erred by considering his work as a firefighter and as a trustee at his church. However, Plaintiff was not prevented from presenting evidence at the hearing regarding his positions as firefighter and as a trustee. To the extent Plaintiff now argues that the ALJ used this as a basis to "impugn" Plaintiff's credibility, the Court does not find that argument to have merit. After all, Plaintiff was free to address his activities in this regarding at the hearing. Accordingly, substantial evidence supports the ALJ's findings with respect to steps one through four.

B.   The Opinions of the Vocational Expert (VE)

Finally, Plaintiff challenges the ALJ's determination that he could work as a marker and/or surveillance system monitor because both of those positions require levels of concentration, focus, and literacy that Plaintiff does not possess. Tr. 20, 71. The ALJ's

hypothetical question to the VE contained all of the limitations that he included within Plaintiff's RFC.  Tr. 69-71.  The VE responded that Plaintiff could work as a marker and/or surveillance system monitor.  Tr. 71.  The VE reduced the number of marker jobs by 70%, from 500,000 to 150,000 due to the sit/stand limitation that was contained in the ALJ's hypothetical question.  Tr. 71.  The VE testified that this was consistent with the Listing set forth in the Dictionary of Occupational Titles ("DOT").  Tr. 72.

The VE's testimony conflicts with the DOT definitions for surveillance system monitor and marker.  Surveillance system monitor requires a reading development level of 3, or the ability to "[r]ead a variety of novels, magazines, atlases, and encyclopedias."  DOT Appendix C.  Plaintiff's RFC, however, as determined by the ALJ, stated that the hypothetical individual could *not* be required to read as part of his or her employment.

It is noted that Plaintiff incorrectly cites that the VE testified that Plaintiff could perform work as a marker, under DOT 781.687-042.  However, the testimony of the VE actually shows that the VE testified that Plaintiff could work as a marker under, DOT 209.587-034.  Tr. 73.  The VE reduced the number of available maker positions by 70%, because of the sit/stand option.  Nonetheless, Plaintiff is correct that the VE did not explain if further reduction was necessary due to the requirement in the DOT Listing that a marker be able to read purchase orders and/or if any positions required piece-work.

However, the Court notes that a conflict between the VE's testimony and the DOT Listings can be overcome by sufficient analysis by the VE and ALJ.  As the United States Court of Appeals for the Third Circuit has explained:

> Social Security Ruling 00–4p requires that the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT, and that, if the testimony does appear to conflict with the DOT, to elicit a reasonable explanation for the apparent conflict. The Ruling requires that

the explanation be made on the record and that the ALJ explain in his decision
how the conflict was resolved.

*Boone v. Barnhart*, 353 F.3d 203, 209 & n.14 (3d. Cir. 2003) (internal quotation marks omitted) (quoting *Burns v. Barnhart*, 312 F.3d 112, 127 (3d Cir. 2002)).

In this case, the ALJ found that "[p]ursuant to SSR 00-4p, the [VE's] testimony is consistent with the information contained in the [DOT]." Tr. 20. Thus, the ALJ did not adequately explain how the conflict between the VE's testimony and the DOT Listings were resolved. Accordingly, there is not substantial evidence to support the ALJ's conclusion that there are jobs in significant number in the national economy that Plaintiff could perform. Upon remand, the ALJ shall either explain how the conflicts between the VE's testimony and the DOT Listings were resolved, identify other occupations that exist in the significant numbers in the national economy that Plaintiff can perform within his RFC, or, if none exist, find Plaintiff disabled.

### VI. CONCLUSION

Based upon the foregoing, the Court finds that ALJ's decision is not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (doc. no. 9) will be GRANTED, and Defendant's Motion for Summary Judgment (doc. no. 12) will be DENIED. The decision of the ALJ will be vacated and the cause remanded for further proceedings consistent with this Opinion.

An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf: All counsel of record.